State vs. Moore.

No. 13,277.

STATE OF LOUISIANA VS. W. H. MOORE, JR.

52 605
109 661

52 605
118 968

SYLLABUS.

1. Considering the provision of Act 108 of 1898, requiring appeals in criminal cases to be taken within three days after sentence has been pronounced, it is, in the view of the court, beyond the power of the State, prior to sentence, to enter into a consent extending the time. The statute appears to be mandatory in terms, as its purpose is to regulate the time within which appeals shall be taken in criminal cases.

2. The court, under the exceptional circumstances of the case, none the less, reviewed the issues, and disposed of the case on the merits and finds that there was no error in the ruling of the trial judge in permitting a witness to testify over the objection of the defendant that he was the owner of the property which he found in the possession of his merchant, and which he identified by his merchant's account.

3. Regarding topics within the ordinary experience of jurymen, they are sufficient judges of the issue without expert testimony.

4. After a witness had said something in regard to the contents of a letter which the witness said he was unable to produce, the court ruled out the evidence and informed the jury that it should not be considered as such. The defendant was not prejudiced in his defense thereby.

5. The statement of the court, made part of the bill, is that the court did not refuse to permit the testimony of any witness to be taken down in writing to be made part of the bill of exception. No such request was timely made.

APPEAL from the Tenth Judicial District, Parish of Avoyelles— Lafargue, J.

Milton J. Cunningham, Attorney General, and Charles V. Porter, District Attorney, for Plaintiff, Appellee.

Adolph Vallery Coco for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J. The accused was indicted for stealing a bale of ginned cotton of the value of twenty-five dollars. He was tried, found guilty as charged, and sentenced to the penitentiary for the period of eighteen months. From the verdict of the jury and the sentence of the court he prosecutes this appeal.

ON THE MOTION TO DISMISS THE APPEAL.

The petition to dismiss the appeal shows that sentence was passed upon the accused on September 26th, 1899, and that he did not obtain an order of appeal until October 3rd following; that under statute 108 of 1898, all appeals in criminal cases must be taken within three days after sentence is pronounced.

An agreement was entered into between the District Attorney, and the counsel for the accused, that sentence should be pronounced against the defendants on September 26th, but effect of sentence should be suspended until the adjournment of the court, at which time the defendants should obtain their orders of appeal as if sentence had been pronounced on that day; that the State should not take advantage of this delay to dismiss the appeals, but that the defendant should, on the contrary, be protected from such motion. This agreement was filed in view of the motion to dismiss that the Attorney General filed on December 9th, on the ground that the appeals were not taken within three days' delay after sentence, and that the Attorney General may be permitted to withdraw the said motion in order to carry out the good faith of the agreement. Said motion to dismiss had been filed by the Attorney General whilst he was in ignorance of the existence of such an agreement.

In compliance with the direction of the court, the attention of the Attorney General having been called to this agreement, his reply was that, considering the provisions of Act 108 of 1898, appeals must be taken within three days after sentence is pronounced, he doubted the power of the District Attorney to make such an agreement and he doubted the power of the Attorney General to consent to the consideration of the appeal taken too late, but if he had the power, he would cheerfully consent to withdraw the motion to dismiss the appeal. We are inclined to agree with the Attorney General. We take it that the statute is mandatory and that the prosecution is not vested with the authority to agree upon a postponement before the sentence has been pronounced. The word "shall" in the statute has a peremptory meaning. "Shall" was not used in the statute to give discretion but to require peremptorily that all appeals shall be taken within three days after sentence. The statute adopted a positive and absolute rule in which public interest is concerned, and which cannot be waived under any of the defined powers given to the prosecution. But the entirely proper motive of the parties and their good faith in

matter of this agreement have induced us, none the less, to consider the rights of the accused and pass upon the issue presented. While we do not give effect to the agreement, under the circumstances, we think it due to the accused to see that he is not made to suffer by an agreement entered into in his behalf.

## On the Merits.

The defendant seeks to have the verdict and sentence annulled on grounds set out in four bills of exceptions.

The first bill of exceptions shows that on the trial of the cause, a witness for the State was asked to state what letters were on the cotton, to which he answered "R W". On cross-examination he answered that he knew it from the fact that, while in New Orleans, F. Gumbel & Co. showed him the account sales of the cotton.

Counsel for the defendant objected to this testimony and moved the court to instruct the jury to give it no consideration for the reason that the account sales was not proof of the fact sought to be elicited. It was *ex parte,* and the accused had no opportunity to enter a denial and no opportunity to cross-examine the witness. Defendant also complains, as made to appear by this bill, of the statement he asserts was made by the trial judge to the jury, to-wit: that the testimony was admissible when considered in connection with the previous testimony of the witness regarding the payment made to him for this cotton by F. Gumbel & Co.

The following are the written reasons of the judge in support of his ruling, made part of the bill of exceptions: that a bale of (the prosecuting witness') cotton was taken from the railroad station where the accused was a porter, and that he afterwards received a letter signed by Robert Washington, identified as written by the accused, containing the statement that his bale of cotton was shipped to New Orleans to F. Gumbel & Co.; that Moore had previously been arrested and the letter contained a request of him to withdraw the charges against Moore—the witness was therefore permitted to testify that he saw the account sales of the cotton while he was in New Orleans and, besides, had received the price of its sale. It appears that this witness was the owner of the cotton. We are not of the opinion that it is error to permit a witness to testify over the objection of the defendant that he was the owner of the property which he traced to the possession of his merchant, as made evident by an account stated which was

shown to him by the merchant. As we take it, the letter before referred to, informed the witness where his cotton was. The testimony of itself had no bearing on the proof of the crime charged. It related to a collateral issue. The witness had sworn that his cotton had been taken from the railroad depot. It had been shipped to the usual market. The registry made for its identification either by the carrier or the merchant to whom it was consigned by the accused was admissible to prove its recepit without the necessity of calling upon the employees of the carrier or the merchant or his clerk to testify in person. It only went to show what became of the cotton charged to have been stolen. It was the proof of a fact not necessarily germane to the crime charged.

There are exceptions to the rule of evidence invoked by the defendant. Thus, as relates to the exception, it has been held "that the inscription on a trunk tag can be proven without producing the tag," and other rulings are to the same effect under the exception. Wharton on Evidence, par. 163. If this evidence has any bearing at all, it only goes to prove that the witness was the owner of the cotton and not that the defendant had stolen it. Ownership of property, charged to have been stolen, can be proven without the necessity of having all the witnesses sworn and examined who are in any way connected with the facts on which the title rests.

This brings us to a consideration of the grounds set out in the second bill of exceptions growing out of the refusal of the court to permit a witness to answer the following question: "If those letters were not genuine, do you think they could have been written in twenty minutes?" the time it is stated another witness fixed within which they had been written. The court did not permit the answer to be given for the reason that the question sought to prove facts within the experience of every one and of which the jurors were competent judges without hearing expert testimony. We understand that the question left to the expert was whether or not the letters were forged. It did not relate, as we take it, to the reasons for the opinion of the expert, but to the veracity of one of the witnesses who testified regarding a particular fact. The objection loses its force when it is manifest that the jurors are the more competent judges of a matter within the common knowledge of every one. The question did not go to the whole merits of the case.

State vs. Moore.

"In matters within the range of ordinary human experience, the opinion of twelve men in the jury box was better, in the eyes of the law, than that of experts." Thompson on Trial, Sec. 605.

Regarding topics within the ordinary experience of jurymen, an expert can not give conclusions, for that reason "an expert can not be asked whether a railroad train stopped long enough for the passengers to get off." Wharton on Evidence, Sec. 405, 9th Ed.

We pass to a consideration of the third bill of exceptions reserved to the court's ruling in permitting a witness to be interrogated regarding the contents of a letter which he declared was in his safe, which was under seizure, in the hands of the sheriff. The court states, in support of the ruling, that the witness stated that he had read the letter which he was unable to produce. Thereupon the court ruled that the witness would be heard, but, immediately after, at the suggestion of the District Attorney, the court says the ruling was changed and the witness did not testify as to its contents. And the court instructed the jury not to consider as testimony anything said by the witness as to this paper or letter. We infer that part of the testimony, in some way not explained, had been heard, which the court desired should not be considered by the jury, and, in consequence, they were instructed as just stated. If an error had been committed, it was proper to correct it, as was done. The accused was not thereby prejudiced in his defense. The court, on appeal, will not assume that a corrected error, under the circumstances, should afford grounds to the accused to set aside the verdict of the jury. We are not led to infer that the witness made a mistake in making the statement that he could not produce the letter, or that the court erred in considering that the letter was not reasonably within the reach of its process. In that view, the testimony as to the contents of the letter, was admissible.

We take up, for discussion, the grounds contained in the fourth bill of exception. It appears by this bill that the District Attorney offered two letters which were admitted in evidence. Counsel for the defendant urges that they are not admissible, as offered, and that he objected and he offered to examine witnesses in rebuttal of the testimony of one of the witnesses who had been heard, and asked the court to permit the evidence to be written, and he also asked that the testimony of another witness be taken as previously given, upon whose testimony the court admitted the letters, stating in support of the refusal to which defendant objects that the last witness referred to had testified,

and another witness was on the stand, and that the request of counsel was no longer timely, and that as to the witness first referred to above, the testimony had been taken and was in writing, and the court adds "that the court never refused accused to offer any evidence in rebuttal, nor refused to have the same reduced to writing;" from which we conclude that the accused was not prejudiced in his defense. Witnesses had testified and their testimony had been taken down in writing. The testimony of one of the witnesses, Coulon, is made part of one of the bills of exceptions. As to him, the request made to have the testimony written was complied with. As to the other, we agree in the conclusion that is was too late to have him recalled and re-examined in order to write down his testimony, particularly while another witness was being examined. Moreover, the court positively states that there was no refusal to write down the testimony. This, we think, must be held as disposing of the issue of fact between counsel and the trial court. With the statements before us, we would not feel justified in holding that there was such refusal "to have testimony reduced to writing" as made it necessary on the part of the court to permit the witnesses to be recalled and examined again. The court stated, in substance, that there was no objection or request made at the time to take the testimony down. The injustice that would justify the remanding of the cause is not at all apparent.

We have examined all the issues presented and have found no grounds upon which to grant the relief for which the defendant prays.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby affirmed.