800 So.2d 68 (2001)
Kewanya LEWIS and Kenyetta Allen
v.
Michael KUBENA, Nafta Transport Express, Inc. and Carolina Casualty Insurance Company.
No. 2000-CA-2362.
Court of Appeal of Louisiana, Fourth Circuit.
October 24, 2001.
*69 Brian G. Meissner, James G. Kambur, Kambur & Meissner, New Orleans, LA, Counsel for Plaintiffs/Appellees.
Jeffrey M. Reilly, New Orleans, LA, Counsel for Intervenor/Appellant (Oceanside, Inc.).
Court composed of Judges MIRIAM G. WALTZER, PATRICIA RIVET MURRAY, and MAX N. TOBIAS, Jr.
MURRAY, Judge.
Oceanside, Inc. appeals the dismissal of its Petition for Intervention against the plaintiffs in this personal injury suit. We amend and affirm the judgment for the reasons that follow.

FACTS AND PROCEEDINGS BELOW
On August 19, 1996, Kewanya Lewis and Kenyetta Allen filed this civil suit for damages, asserting that both had been injured in a car-truck collision on August 18, 1995. After issue had been joined with the defendants and a bench trial had been scheduled,[1] Oceanside, Inc. filed a Petition for Intervention on April 22, 1998. According to this pleading, each of the plaintiffs owed Oceanside approximately $1,600.00 on promissory notes they had executed in early 1996.[2] The Petition further stated:
At the time of the execution of the promissory note [sic], Kewanya Lewis and Kenyetta Allen executed assignments in favor of the holder of the note for its payment from such proceeds as each may realize as a result of the above captioned cause. A copy of the assignment [sic] is attached hereto....
* * * * *
Oceanside, Inc.'s right of intervention herein arises from the aforementioned assignments by Kewanya Lewis and Kenyetta Allen.
* * * * *
From any settlement or judgment in favor of Kewanya Lewis and/or Kenyetta Allen arising from the above captioned cause, Oceanside, Inc. is entitled to be paid, in preference and priority, the amount due on each of the promissory notes and assignments....
The trial judge signed an attached ex parte Order granting leave to intervene.
The Petition for Intervention was served upon plaintiffs' counsel on April 27, 1998, *70 and on May 20, 1998, a preliminary default on the intervention was entered against them. On October 11, 1999, the plaintiffs filed an Answer to Oceanside's Petition, admitting "that certain sums were advanced" but denying the remaining allegations and assertions. Trial of all claims, including the Intervention, was eventually set for May 17, 2000. On May 8th, a settlement on the main demand was entered into the record in open court between the plaintiffs and the defendants.[3] A subsequent Motion for Declaratory Judgment was filed by Oceanside and exceptions to the Intervention were filed by the plaintiffs, but the trial court dismissed these pleadings as untimely under the Pretrial Order.
At the trial on May 17, 2000, Oceanside presented the testimony of Leo Sergo, Jr., who stated he was Clerk-Manager of Oceanside Finance Company. He explained that the company's loan process generally began with a phone call from an attorney at The Personal Injury Law Center, either Jose L. Castro, Jr. or Evan E. Tolchinsky, stating how much money the attorney would personally guarantee from the proceeds of a suit. If Oceanside agreed to make the loan, the attorney filled in the blanks and signed the top portion of a form letter on Law Center stationery, then sent the client, with the letter, to Oceanside's office. Once the client arrived at the office, Mr. Sergo would obtain a signature on the bottom of the form letter to authorize Oceanside's recovery of the loan from any proceeds of the referenced litigation.
Mr. Sergo testified that the originals of the "assignment letters" and promissory notes for each plaintiff, now offered into evidence, had been executed in his presence and retained in Oceanside's normal business records. He stated that while the initial "assignment letter" from each plaintiff showed a loan amount of only $300.00, the amounts due on the promissory notes reflected the fact that both Ms. Lewis and Ms. Allen had each received three loans. When questioned further by the court, Mr. Sergo explained that the note amount for each plaintiff was higher than on the applicable "assignment letter" because "they renewed the loans, that is, to refinance." Based upon this discrepancy in the amounts and the fact that neither promissory note was "identified with this lawsuit," the court ruled that only the "assignment letters" would be admitted into evidence. The promissory notes were then submitted as a proffer under Civil Procedure article 1636.[4]
Oceanside then called Brian G. Meissner, counsel for the plaintiffs, as a witness.[5] Mr. Meissner admitted that his firm had received Oceanside's demand for payment of the plaintiffs' loans and the documents purporting to establish that claim, as well as one or more settlement check(s) from the defendants. He stated, however, that his firm "refused to pay a claim which we do not believe has any merit," and that the checks were not subpoenaed so he did not have them with him. Oceanside then rested its case, and the trial was concluded after brief oral arguments. Because the court had questioned the legal basis for Oceanside's intervention, the parties were granted additional *71 time to submit post-trial memoranda on this issue.
On June 27, 2000, the court rendered judgment for the plaintiffs, explaining in written reasons that because the alleged loans were not shown to be related to "injuries or losses incurred as a result of the accident" sued upon, Oceanside had no right to intervene under Civil Procedure article 1091. In addition, the court found the evidence submitted was insufficient to prove the validity and amount of Oceanside's claims. Therefore, Oceanside's intervention was dismissed with prejudice. This appeal followed.

DISCUSSION
In support of its appeal, Oceanside presents three assignments of error that can be summarized as follows:
1. Because Civil Procedure article 1035 does not permit the filing of an Answer to an incidental demand after entry of a preliminary default, the district court erred in permitting the plaintiffs to present any opposition to the intervention at trial.
2. The trial court erred in refusing to admit the promissory notes into evidence.
3. Because the exclusion of essential evidence was erroneous, the trial court's determination that Oceanside had failed to prove its case must be reversed.
Notably, however, Oceanside has failed to address the primary basis for the trial court's dismissal of its intervention, which is that Oceanside did not have a right to intervene in this case.[6] Because there is no error in this determination, we pretermit discussion of Oceanside's assigned errors.
Civil Procedure article 1091 provides in pertinent part that "[a] third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action." As explained in Amoco Production Co. v. Columbia Gas Transmission Corp., 455 So.2d 1260, 1264 (La.App. 4th Cir.1984), this provision requires that the right asserted by the intervenor "must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights." (Emphasis added). Under this standard, "it is not enough that intervention will aid in the actual payment of a debt ... if the claim for that debt will not be affected by the judgment in the main demand." Sawtelle v. American Nat'l Agents Ins. Group, 94-1091, p. 3 (La.App. 3d Cir.3/1/95), 651 So.2d 456, 458 (emphasis in original).
In Harrison v. Gaylord's Nat'l Corp., 539 So.2d 909 (La.App. 4th Cir.1989), an investigative firm filed an intervention in a personal injury suit against a department store, claiming amounts due for services provided in connection with that litigation. However, this court held that the firm had no right of action under Article 1091 because "[w]hether Harrison wins or loses her personal injury suit, intervenor's claim will not be affected." Id. at 910-11. Therefore, dismissal of the intervention was affirmed. The same result was reached in Sawtelle, supra, where a wrecker service intervened to recover for towing and storage of the plaintiff's motorcycle that had been disabled in the accident at issue in the suit.
In the instant case, Oceanside does not claim that its loans to these plaintiffs *72 were in any way related to the accident at issue in the main demand. Instead, it claims the right to intervene based solely upon the agreements each plaintiff signed, which state as follows:
ASSIGNMENT
I HEREBY GRANT A LIEN AGAINST THE PROCEEDS OF THIS CASE IN FAVOR OF OCEANSIDE FINANCE COMPANY AS NOTED ABOVE, AND I AUTHORIZE AND DIRECT _____ PILC _____, OR ANY ATTORNEY WHO MAY SUBSEQUENTLY REPRESENT ME IN THIS MATTER, TO WITHHOLD AND PAY TO THE FINANCE COMPANY THE PRINCIPAL AND INTEREST OF THIS LOAN AND ALL PREVIOUS OR OTHER LOAN(S). I UNDERSTAND THAT IF THE CASE IS LOST THE LOAN BECOMES DUE AND PAYABLE IMMEDIATELY.
Because the final sentence establishes beyond question that Oceanside's claim for repayment will be unaffected by any judgment on the main demand, the required connexity to support the intervention has not been established.
Although the loans were not alleged to be for litigation-related expenses, Oceanside argued in the court below that its right to intervene rested upon the plaintiffs' "assignment" of their claims as well as the fact that they "granted a lien" against any proceeds from the suit. However, because the language of these agreements does not clearly reflect an intent to transfer ownership of the claim or cause of action, there was no valid assignment under Civil Code article 2642. See Mahayna, Inc. v. Poydras Center Assoc., 96-2089, pp. 4-6 (La.App. 4th Cir.4/30/97), 693 So.2d 355, 357-58, and cases cited therein. Similarly, the mere inclusion of the words "grant a lien" does not establish any preference or priority for this creditor ahead of others, because "[p]rivilege can be claimed only for those debts to which it is expressly granted" by law. La. Civ.Code art. 3185; see Capillon v. Chambliss, 211 La. 1, 17, 29 So.2d 171, 176 (1946) ("a lien, unlike a mortgage, cannot be created by convention or contract between the debtor and creditor unless there is a statute declaring that such a contract shall create the lien."). Therefore, the language of the agreements fails to support Oceanside's claim of a right to intervene in this suit.
For these reasons, the trial court's dismissal of Oceanside's intervention is affirmed. However, because this dismissal is procedural and thus obviates our review of the merits of any claim for repayment, the judgment shall be amended to provide that the dismissal is without prejudice to Oceanside's right to assert its claims against the alleged debtors and/or the guarantor, Jose L. Castro, Jr., through ordinary proceedings. Intervenor-appellant, Oceanside, Inc., is cast for all costs of this appeal.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
TOBIAS, J., CONCURS.
I respectfully concur.
I find that Oceanside, Inc. had no right to intervene, for as a matter of law they were not required to do so in order to protect their rights. Under La. C.C.P. art. 1091, an intervenor's interest must be (1) direct, (2) closely connected with the issue in dispute, (3) founded upon some right, lien, or claim, conventional or legal, and (4) one for which immediate gain or loss will result based upon a judgment rendered between the original parties. United Gas Pipe Line Co. v. Louisiana Public Service Commission, 241 La. 687, 130 So.2d 652 (La. 1961). The plaintiffs' and guarantor's debts to Oceanside were not and could not be extinguished by the adjudication in the principal action of the plaintiffs' claims against the defendants. Oceanside's intervention was intended to only aid the actual payment of the plaintiffs' and guarantor's debts to Oceanside.
Oceanside's cause of action is properly asserted in a separate suit against the plaintiffs and the guarantor. In advance *73 of the adjudication of the plaintiffs' cause of action against the defendants, Oceanside's remedies under the contract documents appear properly asserted only under Chapter 1 of Book VII of the Louisiana Code of Civil Procedure, but not by means of an intervention.
NOTES
[1] The trial was set for May 12, 1998, but was subsequently continued without date for reasons unrelated to the Intervention.
[2] Copies of the notes, attached to the Petition, show that Ms. Allen borrowed $1,968.00 on January 8, 1996, and that Ms. Lewis borrowed $1,968.00 on February 5, 1996; the Petition alleges that the balance due from Ms. Allen is $1,643.21 and $1,602.01 from Ms. Lewis.
[3] There is no Judgment in the record reflecting the resolution and/or dismissal of the main demand, but the transcript indicates that the defendants would pay Ms. Lewis $604.00 and Ms. Allen $6,747.00.
[4] Oceanside's counsel also attempted to proffer "three checks to each of the ladies," but the court refused to accept these documents because they had not been identified by the witness before he left the stand. This ruling is not challenged in Oceanside's appeal.
[5] Mr. Meissner did not represent the plaintiffs at the inception of this suit. The record reflects that plaintiffs discharged their original counsel in November 1996, shortly after disciplinary actions were instituted against the attorneys at The Personal Injury Law Center. See In re Tolchinsky, 99-1742 (La.9/3/99), 740 So.2d 109, and cases cited therein.
[6] Civil Procedure article 927 B provides in pertinent part that "the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, may be noticed by either the trial or appellate court of its own motion."